EDWIN RICHARD BELL AND DORIS VALERIE BELL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 16913–83, 26082–84.    Filed September 5, 1985.

*Peter R. Stromer*, for the petitioners.
*Donna J. Rice*, for the respondent.

OPINION

KÖRNER, *Judge*: In these consolidated cases, respondent determined deficiencies in income tax and additions to tax against petitioners as follows:

| Year | Deficiency | Additions to tax | |
|------|-----------|--------|--------|
| | | Sec. 6653(a)(1)[1] | Sec. 6653(a)(2) |
| 1979 | $1,883 | $94 | 0 |
| 1980 | 8,002 | 400 | 0 |
| 1981 | 7,867 | 393 | To be determined |
| 1982 | [2]1,018 | 0 | 0 |

The issues which the Court must decide are as follows:

(1) Whether petitioners are entitled to claimed deductions for the years in issue for charitable contributions, in the respective amounts of $6,027, $25,627, $22,877, and $2,396;

(2) Whether petitioners are entitled to a claimed deduction for employee business expenses for the year 1982 in the amount of $3,008;

(3) Whether petitioners are liable for additions to tax under section 6653(a) for the years 1979 through 1981; and

(4) Whether under the facts of this case the Court should award damages in favor of the United States under section 6673.

Some of the facts herein were stipulated, and such stipulation, together with accompanying exhibits, is incorporated herein by this reference.

At the time of filing their petitions herein, petitioners were residents of Pacifica, California. Petitioners filed joint Federal income tax returns for each of the years 1979 through 1982.

For convenience, our remaining findings and opinion will be grouped together on the issues to which they relate.

## 1. The Charitable Contributions Issue

The Universal Life Church, Inc., of Modesto, California (hereinafter ULC, INC.), issued a charter to petitioners in 1979

---

[1]All statutory references are to the Internal Revenue Code of 1954 as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.

[2]In his answer with respect to this year, respondent claimed an increased deficiency in the amount of $1,954, for a total of $2,972.

to establish a local congregation of that church. During the years in issue, ULC, INC., held exempt status from Federal income taxes under the provisions of section 501(c)(3).[3] In their joint income tax returns for 1979, 1980, and 1981, petitioners claimed charitable deductions in the respective amounts of $6,027, $25,627, and $22,877. For the year 1982, petitioners claimed a charitable contributions deduction in the amount of $2,396, as a carryover to that year of an unused charitable contribution in that amount from the year 1981 (presumably under the provisions of section 170(d)). In his statutory notices of deficiency for the years 1979, 1980, and 1981, respondent disallowed the claimed deductions on the grounds, inter alia, that such amounts had not been paid during the taxable years. For the year 1982, respondent's statutory notice of deficiency did not disallow the claimed charitable contributions carryover, but respondent, in his answer filed herein to the petition for that year, affirmatively raised the issue.

Although not revealed by their income tax returns for the respective years, which were introduced in evidence, petitioners contend that their claimed contributions were made to ULC, INC., a qualified charitable donee, and were made in cash. Other than the brief statement of petitioner Edwin Bell on the witness stand that petitioners had given to ULC, INC., in the amounts as stated in their tax returns for the years 1979 through 1981, however, there is no other proof in this record that any amount was given to anyone. Since petitioners contend the contributions were made by cash, no canceled checks were proffered. No bank statements were offered which would show the alleged contributions flowing into a bank account under the control of ULC, INC., nor was there any other admissible evidence proffered which would corroborate petitioner Edwin Bell's bare-bones and self-serving testimony.[4]

---

[3]ULC, Inc.'s exempt status was revoked on Sept. 4, 1984. Announcement 84–90, 1984–36 I.R.B. 32.

[4]At trial, petitioners sought to introduce into evidence alleged "receipts" from ULC, Inc., showing contributions by petitioners in amounts different (and larger) for each year than those contended for by petitioners herein. Petitioners' witness Robert Imbeau, who described himself as a member of the board of directors of ULC, Inc., authenticated his signature on the form for 1979, but not on the 1980 and 1981 forms. The witness testified that said receipts were prepared from the regularly kept books and records of ULC, Inc., and under his supervision, and were supplied to donors to evidence their contributions. Further examination of the witness, however, revealed that the "records" of ULC, Inc., which were the basis and the foundation of the proffered receipts were documents prepared by petitioners' local congregation, and were not records kept in the ordinary course of business by ULC, Inc., at all. Such alleged underlying documents were not offered in

Petitioners had the burden of proof for the years 1979, 1980, and 1981 to establish that they were entitled to the deductions disallowed by respondent. *Welch v. Helvering,* 290 U.S. 111 (1933); Rule 142(a). They failed completely to carry this burden of proof.

With respect to the year 1982, since disallowance of the claimed carryover deduction in that year from the year 1981 was first raised by respondent in his answer to the petition for that year, technically the burden of proof as to this issue was upon respondent. Rule 142(a). However, our holding that petitioners failed to carry their necessary burden of proof to establish the claimed amount of charitable contributions made in the year 1981 amounts to a negative determination of that fact, viz, that such claimed contribution was not made. *Fairmont Aluminum Co. v. Commissioner,* 22 T.C. 1377 (1954), affd. 222 F.2d 622 (4th Cir. 1955), cert. denied 350 U.S. 838; *Stern & Stern Textiles, Inc. v. Commissioner,* 26 T.C. 1000 (1956), affd. 263 F.2d 538 (2d Cir. 1959), cert. denied 361 U.S. 831. The effect of such a determination with respect to the year 1981 necessarily means that there was no unused charitable contributions carryover which petitioners could utilize in 1982. We accordingly sustain respondent for all years with respect to the charitable contributions issue.

## 2. *The Business Expense Issue*

In the year 1982, petitioner Edwin Bell was employed as a union representative by Operating Engineers Local Union No. 3, of San Francisco, California. His duties, inter alia, included going to various locations within the union's territory to discuss union business with employers, union members, and/ or those wishing to become union members, either through organizing an employer's place of business or otherwise. Edwin found it convenient on many occasions to discuss such business with these people at lunch or dinner meetings, because such

---

evidence. We have repeatedly held that ULC, Inc., and its various chapters or congregations are not a single organization for tax purposes, but are separate. *Hall v. Commissioner,* 729 F.2d 632 (9th Cir. 1984), affg. T.C. Memo. 1982-337; *Davis v. Commissioner,* 81 T.C. 806 (1983), affd. by unpublished opinion 767 F.2d 931 (9th Cir. 1985), and cases cited therein. The "receipts" were accordingly refused admission into evidence as inadmissible hearsay. They were clearly not within any of the exceptions of rule 803 or 804 of the Federal Rules of Evidence. *Kalgaard v. Commissioner,* T.C. Memo. 1984-283, affd. 764 F.2d 1322 (9th Cir. 1985); *Davis v. Commissioner, supra; Hall v. Commissioner, supra.*

people were more readily available and such meetings did not infringe on their normal working hours. In the joint income tax return for 1982, Edwin claimed unreimbursed[5] employee business expenses in connection with his union employment as follows:

| | | |
|---|---|---:|
| (a) | Dinners and drinks | $649 |
| (b) | Lunches | 496 |
| (c) | Gifts and organizing expenses | 333 |
| (d) | Business w/other unions | 261 |
| (e) | Telephone and telegraph | 77 |
| (f) | Trade journals | 96 |
| (g) | Tickets, et al | 34 |
| (h) | Advertising | 206 |
| (i) | Union contributions | 600 |
| (j) | Flowers - deceased members | 58 |
| (k) | Stationery and postage | 171 |
| (l) | Automobile expenses | 27 |
| | Total | 3,008 |

At trial, Edwin admitted that he had no form of documentation or other substantiation to support the claimed expenses in items (e) through (l) in the above list, and we therefore hold that he has failed to substantiate such expenses as required by section 162 and section 1.162–17, Income Tax Regs.

With respect to items (a) through (d) in the above list, Edwin testified that they were all included in a contemporaneous diary which he kept, and the diary was offered and received in evidence. It consisted of a spiral diary or notebook, separated into each day of the year, to which Edwin stapled a receipt stub from the bar or restaurant which was patronized, showing the date and amount of the charge, and with further notations by Edwin showing the persons entertained.

Although the diary maintained by Edwin shows expenditures for food and drink on the dates indicated, and at specific restaurants or bars, together with the names of the persons entertained, so as to be a satisfactory documentation of lunches, dinners, and drinks within the requirements of section 1.274–5(b) of respondent's regulations, there is nothing in the diary to support the claimed items of "gifts and

---

[5]Edwin testified that he received an expense allowance from his employer of $75 per week, but that such allowance was reported in his taxable income, presumably as part of the Form W-2 wages reported by the Union. No evidence to the contrary appearing, we accept Edwin's testimony on this point.

organizing expenses" and "business w/other unions" (items (c) and (d) above). We accordingly disallow such items for lack of substantiation, but we will allow items (a) and (b), in the total amount of $1,145 as claimed by Edwin. Compare *Moylan v. Commissioner*, T.C. Memo. 1968–15; *Lickert v. Commissioner*, T.C. Memo. 1964–47.

### 3. Additions to Tax Under Section 6653

For the years 1979, 1980, and 1981, respondent determined that petitioners were liable for the 5-percent addition to tax provided by section 6653(a)(1), for "negligence or intentional disregard of rules or regulations (but without intent to defraud)." In addition, for the year 1981, respondent determined that additions to tax should be made under section 6653(a)(2).[6] That subsection provides for an addition to tax in an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment for a year which is due to negligence or intentional disregard of rules and regulations for the period beginning on the last day for payment of the underpayment.

With respect to respondent's additions to tax under section 6653(a)(1), the burden of proof to show error in respondent's determination was upon petitioners. *Bixby v. Commissioner*, 58 T.C. 757 (1972); Rule 142(a).

So far as the additions to tax under section 6653(a)(1) are concerned, petitioners have failed to carry their burden of proof to show any error on the part of respondent. Indeed, the record herein demonstrates the contrary, in two respects. First, petitioners argue that they complied with all applicable rules and regulations regarding the substantiation of their claimed contributions to ULC, INC., and proffered alleged receipts from that organization to prove the fact and the amount of their contributions. However, as we have discussed above herein, such alleged receipts were not admissible to substantiate the claimed contributions, since the facts surrounding the creation of these alleged receipts cast serious doubt upon their reliability. Second, and more important, respondent's regulations in force during the years 1979, 1980,

---

[6]The cited subsection is effective for calendar years beginning with 1981. Pub. L. 97–34, sec. 722(b)(1), 95 Stat. 342.

and 1981 clearly required petitioners to disclose in their returns the identity of the charitable organization to which the claimed contributions were made. Sec. 1.170A–1(a)(2), Income Tax Regs. No such required disclosure was made by petitioners in the returns which they filed for these years.

So far as the addition to tax for the year 1981 under the provisions of section 6653(a)(2) is concerned, petitioners' entire underpayment for each year was attributable to their claimed charitable contribution deductions. We therefore conclude that for purposes of section 6653(a)(2), all of petitioners' underpayment for 1981 was attributable to negligence and we therefore sustain the addition to tax imposed thereunder.

## 4. Award of Damages Under Section 6673

For the years 1979, 1980, and 1981, covered by docket No. 16913–83 herein, respondent urges that damages should be awarded in favor of the United States under the provisions of section 6673.[7]

A review of the record herein shows that such an award of damages is clearly justified. This Court has been faced with numerous cases, such as this one, with factual situations not significantly different, involving attempts by taxpayers to use the "pretext of a church to avoid paying their fair share of taxes, * * * [and to] resort to the courts in a shameless attempt to vindicate themselves." *Miedaner v. Commissioner*, 81 T.C. 272, 282 (1983). Such cases have uniformly been held by this Court to be entirely without merit, and by now, the continued assertion of these frivolous and meritless claims can no longer be considered to be serious efforts by bona fide taxpayers to vindicate a legitimate position. They are, in short, frivolous. See *Larsen v. Commissioner*, 765 F.2d 939 (9th Cir. 1985), affg. an order of dismissal of this Court; *Kalgaard v. Commissioner*, 764 F.2d 1322 (9th Cir. 1985), affg. T.C. Memo. 1984–283. The volume of frivolous cases of this type, of which

---

[7]Sec. 6673 provides:

"Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax."

petitioners' is one, have added to the overwhelming caseload in this Court, and have cost both this Court as well as respondent considerably in additional time and effort in order to dispose of them. As the Court of Appeals for the Fifth Circuit stated, "Appellants' contentions are stale ones, long settled against them. As such they are frivolous." See *Lonsdale v. Commissioner*, 661 F.2d 71, 72 (5th Cir. 1981), affg. a Memorandum Opinion of this Court.

Whether or not petitioners herein were aware of the total lack of merit in their claims when they filed their petition is not controlling. Prior to the time this case came to trial, the record herein shows that respondent had advised petitioners repeatedly that their claims were without merit, and had warned petitioners that if they persisted in their frivolous appeals, respondent would seek to invoke damages against them under section 6673. Petitioners ignored these warnings.

Petitioners argue vigorously in opposition to the imposition of any damages herein under section 6673, contending that the imposition of such damages is unconstitutional, in that it infringes upon the petitioners' rights under the First Amendment of the Constitution.[8] This argument approaches the same level of frivolity as petitioners' underlying claims themselves.

Section 6673 in its present form was enacted by the Tax Equity and Fiscal Responsibility Act (TEFRA), Pub. L. 97–248, section 292, 96 Stat. 572. It makes no attempt to infringe upon the right of any citizen who, acting seriously and in good faith, wishes to petition this Court for redress of grievances which he has against the. Commissioner. As we said in *Hatfield v. Commissioner*, 68 T.C. 895, 899 (1977), however,

Any citizen may resort to the courts whenever he or she in good faith and with a colorable claim desires to challenge the Commissioner's determination; but that does not mean that a citizen may resort to the courts merely to vent his or her anger and attempt symbolically to throw a wrench at the system * * *

In *Connor v. Commissioner*, 770 F.2d 17 (2d Cir. 1985), the court stated: "A taxpayer has no constitutional right to bring frivolous lawsuits."

---

[8]As pertinent herein, the First Amendment provides:

"Congress shall make no law * * * abridging * * * the right of the people * * * to petition the Government for a redress of grievances."

The rights quaranteed to the citizen by the First Amendment to the Constitution are important and fundamental, but they are not absolute. They may not be used to subvert and destroy those very rights which the amendment was designed to safeguard. Many years ago, in a case involving First Amendment rights of free speech, Mr. Justice Holmes put it very well:

But the character of every act depends upon the circumstances in which it is done * * * The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic. It does not even protect a man from an injunction against uttering words that may have all the effect of force * * * The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent. It is a question of proximity and degree. * * * [*Schenck v. United States*, 249 U.S. 47, 52 (1919).]

The right of petitioners to come to this Court to petition their Government for the redress of grievances does not include the right to attempt to bog down the functioning of this Court and subvert the orderly administration of justice. When faced with this situation, this Court, as well as other courts, has the right to take remedial action, both inherently and as authorized by Congress. See *Larsen v. Commissioner, supra,* and *Kalgaard v. Commissioner, supra* (both involving frivolous appeals of the type involved herein); *Sparrow v. Commissioner,* 748 F.2d 914 (4th Cir. 1984); *Tatum v. Regents of Nebraska-Lincoln,* 462 U.S. 1117 (1983). The Bill of Rights is designed to guarantee legitimate rights of all citizens, but it is not a suicide pact. As we said in *Abrams v. Commissioner,* 82 T.C. 403, 412 (1984):

The direction of this nation's highest court is crystal clear—that no court should permit frivolous or groundless appeals, not only in discrimination suits but in any other area of litigation, including Federal income taxation. The language of amended section 6673 is equally clear.

Here, petitioner has instituted these proceedings and has asserted as his defense to the Commissioner's determinations nothing but frivolous and groundless contentions. Petitioners with genuine controversies were delayed while we considered this case.

On this record, we conclude that petitioner's position for the years 1979, 1980, and 1981 was entirely without merit, and, even if it could be said that the petition was not instituted

initially on frivolous grounds, its maintenance in the face of overwhelming contrary authority and in the fact of repeated warnings by respondent constitutes a clear showing that it was "maintained by the taxpayer primarily for delay" within the meaning of section 6673. We accordingly award damages to the United States under section 6673 in the amount of $5,000, in docket No. 16913–83.

> *Decision will be entered for the respondent in docket No. 16913–83.*
> *Decision will be entered under Rule 155 in docket No. 26082–84.*