STEWART L. BROWN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket No. 28797-84.
United States Tax Court
T.C. Memo 1986-268; 1986 Tax Ct. Memo LEXIS 338; 51 T.C.M. (CCH) 1321; T.C.M. (RIA) 86268; July 2, 1986. Stewart L. Brown, pro se. Albert A. Balboni, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined a deficiency in petitioner's Federal income tax for the year 1982 in the amount of $2,400 as well as additions to tax for that year pursuant to sections 6653(a)(1) and 6653(a)(2) in the amount of $120 and 50 percent of the interest due on $2,400, respectively. The principal issue is the correctness of the Commissioner's disallowance of a $12,000 deduction for charitable contributions *339 claimed on petitioner's 1982 return as having been made to "U.L. Church". Also before us are the additions to tax and the propriety of charging petitioner with liability for damages under section 6673. The parties have filed a stipulation of facts which, together with accompanying exhibits, is incorporated herein by this reference. Petitioner, who appeared on his own behalf, was the sole witness at the trial. For convenience, our findings of fact and opinion are combined. At the time the petition herein was filed, petitioner maintained a mailing address of P.O. Box 2745, Providence, Rhode Island. During the year at issue, petitioner was employed as a "custodian" by the Providence School Department. He received $9,696.93 in earnings from that job, but returned to his employer $329.78 thereof that had been paid to him while he was on military duty. He also had earnings of $2,441.48 for services performed as a member of the army reserves. His only other income in 1982 consisted of $10.04 interest, $968 unemployment compensation, and a $15,000 award as a settlement of protracted litigation for a number of years against Brown & Sharpe Manufacturing Company on an Equal Employment *340 Opportunity claim. In the latter connection, he received in May 1982 a certified check for $10,291.80, the net amount of the settlement remaining after withholding for Federal and State income taxes and social security taxes. Petitioner had previously been in the armed forces some 29 years, most of which were served in the Army. At the time of retirement he had attained the rank of master sergeant. While in the service he had additional duty as a "senior enlisted chaplain". The record does not establish whether such activity represented more than a comparatively minor portion of his duties, but it does show that he at least performed invocations. He had never been a minister in the civilian world. He has never attended a seminary or received any comparable formal religious educational training. However, he holds honorary Doctor of Divinity "degrees" from three churches at which he had spoken. He was and presumably still is affiliated with the Protestant religion and although he does not regularly attend services at a church in a denomination of that religion, he does make a charitable contribution to such a church around Christmastime. The record is unclear whether he was *341 or is a member of such church or whether he was or is a member of any other church. On his 1982 income tax return petitioner claimed a $12,000 deduction for an alleged contribution to the Universal Life Church (not shown to be connected in any way with the church, presumably in the Providence area, that he may have occasionally attended), as well as other deductions aggregating $1,647 for unspecified charitable contributions. The Commissioner has not challenged the deduction for these latter contributions, the majority of which had been made by check, but he has disallowed the $12,000 deduction. This Court has had scores, if not hundreds, of cases revolving around the Universal Life Church, Inc. of Modesto, California (ULC). These cases have made clear beyond question that ULC, functioning as a mail order ministry, has granted "charters" for local churches to individuals throughout the country, at the same time purporting to "ordain" them as "ministers" and conferring upon them "degrees" of Doctor of Divinity. In one form or another such individuals have claimed, uniformly without success, that all or a sustantial portion of their income from various secular activities is either *342 nontaxable or subject to diminution by alleged charitable contributions either to ULC or to their local ULC "church". ULC has aided and abetted these claims by providing "receipts" for the alleged contributions, and plainly has been at the center of such highly abusive tax scams. [1]
*343 Although petitioner does not appear to have obtained any "charter" from ULC to establish his own local affiliated church, and thus does not fall into the usual mold of ULC contributors, we are satisfied that he has failed to prove by credible evidence that he in fact made contributions aggregating $12,000 to ULC. We are quite aware that the IRS once ruled that ULC was itself tax exempt, [2] and that this ruling was revoked by an announcement published on September 4, 1984. Announcement 84-90, 1984-36 I.R.B. 32. However, the year before us is 1982, and if petitioner in fact made his alleged $12,000 contribution to ULC in that year, prior to revocation of the ruling, the claimed deduction would be available to him. Section 1.509(a)-7(a), Income Tax Regs.; Rev. Proc. 82-39, 1982-2 C.B. 759. We therefore proceed to consider whether on the record before us petitioner has carried his burden of proof to establish that he in fact made the disputed $12,000 contribution to ULC in 1982. *344 The evidence discloses that in September of 1982 petitioner met a "Reverend" or "Bishop" William Jensen (Jensen). Jensen, who resides in Rehobeth, Massachusetts, had a "church" chartered by ULC. Petitioner testified in substance that they discussed the "teachings" of the Universal Life Church, which impressed him and which he found very much to his liking. After considering the matter, he decided to make a contribution to ULC. The $12,000 contribution allegedly made by him consisted of four installments in November and December of 1982. As to two of them, the evidence shows that he issued and delivered two checks to Jensen, one for $100 dated November 1, 1982, and the other for $200 dated November 15, 1982. Each such check was payable to "Universal Life Church -- Rev. Jensen". Each was endorsed by Jensen, but was not forwarded by him to ULC in Modesto, California; rather, each was negotiated at the Taunton Savings Bank in Massachusetts. There is no credible evidence that the proceeds were ever sent by Jensen to ULC in Modesto, California. As to the other two installments, petitioner testified that he gave Jensen $5,700 in $20 bills on November 10, 1982, and $6,000 also *345 in $20 bills on or about December 15, 1982. He indicated that Jensen gave him donation "slips" in respect of these alleged "contributions", but he did not offer them in evidence. Nor did he call Jensen as a witness. There was no satisfying evidence that Jensen ever sent any portion of the alleged cash contributions to ULC in Modesto. However, petitioner did offer in evidence an "Annual Receipt of Contributions For the Year 1982" in the form of a letter addressed to him on the stationery of Universal Life Church, Inc., stating that he had "contributed" $12,000. The letter appeared to be a pre-printed form into which petitioner's name and address, as well as the year and the amount of his alleged contribution, were inserted. It was dated April 9, 1984, and bore the signature "Linda Earheart", who was not otherwise identified. We rejected it as inadmissible hearsay, in accord with an impressive line of cases, excluding from evidence similar "receipts" from ULC or from a ULC chartered "church". [3] In any event, even if we had admitted it, the conclusion that we reach herein would not be different, since we carefully examined it prior to exclusion, and found it thoroughly unconvincing. *346 *347 Petitioner's testimony at trial was evasive, rambling, and often combative. True, it satisfied us that he had a source of funds (primarily from the settlement of his Equal Employment Opportunity suit), or, as he put it, a "cash flow", from which he could have made the contribution. We were also satisfied that he had a lifestyle and religious background consistent with making substantial contributions to a church. But this is a far cry from being satisfied that he made a $12,000 contribution to a California church that he had never visted, when all of his other contributions (including those to what might be considered as his own church, presumably in the Providence area) amounted to an aggregate of $1,647. Although the evidence does establish that petitioner did part with $300 represented by the two checks given to Jensen, this is far from proving that he made even a deductible $300 contribution to ULC. Wholly apart from the very real possibility that this may have represented no more than a fee paid by him to furnish the basis for a claim to a $12,000 deduction, the evidence of record completely fails to show that this $300 ever reached ULC in Modesto. Since petitioner did *348 not prove that his contributions reached Modesto -- or were given even to one shown to be an authorized representative of ULC --, he was entitled to the claimed deductions only if he established that an organization which those contributions did reach qualified for exemption. The burden was upon petitioner to make this showing. Bell v. Commissioner,85 T.C. 436, 439 (1985); Davis v. Commissioner,81 T.C. 806, 815 (1983), affd. without opinion 767 F.2d 931 (9th Cir. 1985). Thus, even if it be thought that the contributions were made to Jensen's local chapter of ULC, this does not prove that they were deductible. The record is silent as to whether Jensen's Rehobeth chapter of ULC could qualify as an exempt organization, and it has been firmly established that the tax exempt status of the ULC-Modesto (prior to revocation of the IRS ruling) does not automatically encompass other ULC chartered "congregations". [4]
*349 Further, we find that petitioner has not satisfied his burden of proving, under Bixby v. Commissioner,58 T.C. 757, 791-792 (1972), that his underpayment of tax was not due to his own negligence in failing to substantiate his cash contributions and verify that those contributions substantiated ($300) were forwarded to ULC-Modesto. The law has been clear for some time that annual receipts of the type petitioner produced to show the amount of his alleged contributions and that they reached ULC-Modesto would not be admitted into evidence. Consequently, we sustain the Commissioner's imposition of additions to tax under section 6653(a)(1) and (a)(2) since the underpayment of tax is attributable solely to the negligently claimed charitable deduction. As to the Government's request that petitioner be charged with damages under section 6673, we have decided in the exercise of our discretion not to impose such damages here. Although we were fully satisfied that petitioner had failed to carry his burden of proof, we were nevertheless left with certain troubling doubts about him in view of his religious background and the arguably possible conclusion that he was moved *350 to make such a disproportionately large contribution to ULC because he was favorably impressed with its "teachings". [5] He seemed to us to be somewhat different from most of the taxpayers seeking the benefit of ULC connection, even though on balance, the scales in our judgment tipped against him. In the circumstances, we are reluctant to provide for damages under section 6673. Decision will be entered for the respondent.
Footnotes
1. The cases are too numerous for comprehensive cataloguing, but the following are some random samples. See, e.g., Flynn v. Commissioner,782 F.2d 1042 (6th Cir. 1985); Larsen v. Commissioner,765 F.2d 939 (9th Cir. 1985); Bell v. Commissioner,85 T.C. 436 (1985); Dusha v. Commissioner,82 T.C. 592 (1984); Davis v. Commissioner,81 T.C. 806 (1983), affd. without opinion 767 F.2d 931 (9th Cir. 1985); Lester v. Commissioner,T.C. Memo. 1985-539, 50 TCM 1327, 54 P-H Memo T.C. par. 85,539; Weaver v. Commissioner,T.C. Memo. 1985-473, 50 TCM 1020, 54 P-H Memo T.C. par. 85,473; Rager v. Commissioner,T.C. Memo. 1984-563, 48 TCM 1456, 53 P-H Memo T.C. Par. 84,563, affd. 775 F.2d 1081 (9th Cir. 1985); Lee v. Commissioner,T.C. Memo. 1984-562, 48 TCM 1454, 53 P-H Memo par. 84,562; Kalgaard v. Commissioner,T.C. Memo. 1984-283, 48 TCM 206, 53 P-H Memo T.C. par. 84,283, affd. 764 F.2d 1322 (9th Cir. 1985); Fowler v. Commissioner,T.C. Memo. 1984-311, 48 TCM 309, 53 P-H Memo T.C. par. 84,311; Beasley v. Commissioner,T.C. Memo. 1984-304, 48 TCM 287, 53 P-H Memo T.C. par. 84,304; Hall v. Commisioner,T.C. Memo. 1982-337, 44 TCM 151, 51 P-H Memo T.C. par. 82,337, affd. 729 F.2d 632 (9th Cir. 1984). Involvement in these abusive tax schemes, by providing receipts to alleged contributors, has been the basis for criminal conviction of persons affiliated with chartered churches of the ULC on counts of aiding and assisting in the preparation of false income tax returns in violation of sec. 7602(2) as well as conspiring to defraud the United States by impeding the collection of income taxes in violation of 18 U.S.C. sec. 371. See United States v. Adu,770 F.2d 1511, 1512-1513 (9th Cir. 1985); United States v. Gleason,753 F.2d 83, 84↩ (8th Cir. 1985).
2. That ruling was undoubtedly influenced, if not prompted, by a District Court decision rendered in early 1974. Universal Life Church, Inc. v. United States,372 F.Supp. 770↩ (E.D. Cal. 1974). It was thereafter revoked when a subsequent accumulation of ULC cases clearly demonstrated the substantial and highly abusive part that ULC has played in aiding and abetting, if not promoting, wholly invalid tax avoidance or evasion schemes. We think it very doubtful that the District Court would today follow its early decision in the face of such more recent evidence.
3. See, e.g., Flynn v. Commissioner,supra,782 F.2d at 1042; Bell v. Commissioner,supra,85 T.C. at 438-439 n. 4; Davis v. Commissioner,supra,81 T.C. at 814-815; Zollo v. Commissioner,T.C. Memo. 1986-60, 51 TCM 443, 445, 55 P-H Memo T.C. par. 86,060; Elliott v. Commissioner,T.C. Memo. 1985-493, 50 TCM 1111, 1113 n. 3, 54 P-H Memo T.C. par. 85,493; Cox v. Commissioner,T.C. Memo. 1985-464, 50 TCM 971, 973, 54 P-H Memo T.C. par. 85,464; Sensing v. Commissioner,T.C. Memo. 1985-465, 50 TCM 973, 974-975, 54 P-H Memo T.C. par. 85,465. Eutsler v. Commissioner,T.C. Memo. 1985-438, 50 TCM 872, 873, 54 P-H Memo T.C. par. 85,438; Conlow v. Commissioner,T.C. Memo. 1985-430, 50 TCM 832, 833 n. 5, 54 P-H Memo T.C. par. 85,430; Layden v. Commissioner,T.C. Memo. 1985-372, 50 TCM 527, 529 n. 4, 54 P-H Memo T.C. par. 85,372; Morgan v. CommissionerT.C.Memo. 1985-280, 50 TCM 114, 115 n. 3, 54 P-H Memo T.C. par. 85,280; Uhrig v. Commissioner,T.C. Memo. 1985-206, 49 TCM 1355, 1356, 54 P-H Memo T.C. par. 85-206; Gaster v. Commissioner,T.C.Memo. 1984-590, 49 TCM 38, 40, 53 P-H Memo. T.C. par. 84,590; Lee v. Commissioner,T.C. Memo. 1984-562, 48 TCM 1454, 1455, 53 P-H Memo T.C. par. 84,562; Rager v. Commissioner,T.C. Memo. 1984-563, 48 TCM 1456, 1458, 53 P-H Memo. T.C. par. 84,563, affd. 775 F.2d 1081 (9th Cir. 1985); Martinez v. Commissioner,T.C. Memo. 1984-526, 48 TCM 1271, 1273, 53 P-H Memo T.C. par. 84-526; Swanson v. Commissioner,T.C. Memo. 1984-524, 48 TCM 1267, 1268, 53 P-H Memo T.C. par. 84,524; DiPierri v. Commissioner,T.C. Memo. 1984-498, 48 TCM 1156, 1157, 53 P-H Memo T.C. par. 84,498; Kalgaard v. Commissioner,T.C. Memo. 1984-283, 48 TCM 206, 207, 53 P-H Memo T.C. par. 84,283, affd. 764 F.2d 1322 (9th Cir. 1985); Addeo v. Commissioner, 1984-493, 48 TCM 1126, 1127, 53 P-H Memo. T.C. par. 84,493; Hoskinson v. Commissioner,T.C. Memo. 1984-400, 48 TCM 678, 679, 53 P-H Memo T.C. par. 84,400; Odd v. Commissioner,T.C. Memo. 1984-180, 47 TCM 1483, 1484, 53 P-H Memo T.C. par. 84,180; Rondinelli v. Commissioner,T.C. Memo. 1984-155, 47 TCM 1379, 1380-1381, 53 P-H Memo. T.C. par. 84,155; Schreiber v. Commissioner,T.C. Memo. 1983-754, 47 TCM 680, 682, 52 P-H Memo T.C. par. 83,754; Murphy v. Commissioner,T.C. Memo. 1983-59, 45 TCM 621, 622 n. 3, 53 P-H Memo T.C. par 83,059; Mustain v. Commissioner,T.C. Memo. 1982-670, 45 TCM 153, 155, 51 P-H Memo T.C. par. 82,670; Owens v. Commissioner,T.C. Memo. 1982-671, 45 TCM 156, 157, 51 P-H Memo T.C. par. 82,671; Chumley v. Commissioner,T.C. Memo. 1982-473, 44 TC, 861, 862, 51 P-H Memo. T.C. par. 82,473; Daly v. Commissioner,T.C. Memo. 1982-59, 43 TCM 471↩, 472, 51 P-H Memo T.C. par. 82,059.
4. See, e.g., Rager v. Commissioner,775 F.2d 1081, 1082 (9th Cir. 1985), affg. a Memorandum Opinion of this Court; Hall v. Commissioner,729 F.2d 632, 634 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; Davis v. Commissioner,supra,81 T.C. at 815; Zollo v. Commissioner,T.C. Memo. 1986-60, 51 TCM 443, 445, 55 P-H Memo T.C. par. 86,060; Van Cleve v. Commissioner,T.C. Memo. 1985-546, 50 TCM 1353, 1355, 54 P-H Memo T.C. par. 95,546; Gaster v. Commissioner,T.C. Memo. 1984-590, 49 TCM 38, 40, 53 P-H Memo T.C. par. 84,590; Bradfield v. Commissioner,T.C. Memo 1984-481; 48 TCM 1071, 1072, 53 P-H Memo T.C. par. 84,481. Hoskinson v. Commissioner,T.C. Memo 1984-400, 48 TCM 678, 679, 53 P-H Memo T.C. par. 84,400; Mendenhall v. Commissioner,T.C. Memo. 1983-491, 46 TCM 1120, 1122 n. 4, 52 P-H Memo T.C. par. 83,491; Solanne v. Commissioner,T.C.Memo. 1983-67, 45 TCM 657, 658, 52 P-H Memo T.C. par. 83,067; Murphy v. Commissioner,T.C.Memo. 1983-59, 45 TCM 621, 623 n. 4, 52 P-H Memo T.C. par. 83,059; Owens v. Commissioner,T.C. Memo. 1981-671, 45 TCM 156 159 n. 5, 51 P-H Memo T.C. par. 82,671; Mustain v. Commissioner,T.C. Memo 1982-670, 45 TCM 153, 155 n. 5, 51 P-H Memo T.C. par, 82,670; Riemers v. Commissioner,T.C. Memo. 1981-456, 42 TCM 838, 840-841, 50 P-H Memo T.C. par. 81,456. Cf. American New Covenant Church v. Commissioner,74 T.C. 293 (1980); Basic Bible v. Commissioner,74 T.C. 846, 855-856 (1980), affd. sub. nom. Granzow v. Commissioner,739 F.2d 265↩ (7th Cir. 1984).
5. Pointing in the other direction was his admission at the trial that he "couldn't care less" whether his contribution reached ULC-Modesto since he had the "donation slips" from it. This certainly suggests that he was interested solely in a tax deduction, and was not motivated by a desire to benefit a church admired by him.↩