DALE K. AND DONNA L. SANDVALL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sandvall v. Commissioner
Docket No. 10065-87.
United States Tax Court
T.C. Memo 1989-189; 1989 Tax Ct. Memo LEXIS 190; 57 T.C.M. (CCH) 238; T.C.M. (RIA) 89189; April 26, 1989
*190 Held: Petitioners' trust is a sham entity; its gross receipts are attributable to petitioners. Held further: petitioners are liable for additions to tax pursuant to sections 6653(a)(1) and (2) and 6661. Held further: petitioners are liable for increased interest pursuant to section 6621(c). Held further: damages of $ 5,000 awarded to the United States. Dale K. Sandvall and Donna L. Sandvall, pro se. Debora H. Delgado, for the respondent. WHITAKER
*191 MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: By statutory notice dated February 26, 1987, respondent determined a deficiency in petitioners' 1983 Federal income taxes in the amount of $ 100,219.50. Respondent determined additions to tax: (1) under *192 section 6653(a)(1)[1] in the amount of $ 5,010.98; (2) under section 6653(a)(2) in the amount of 50 percent of the interest on $ 100,219.50; and (3) under section 6661 in the amount of $ 25,054.87. Further, respondent *193 determined that petitioners were liable for increased interest pursuant to section 6621(c) of the Internal Revenue Code of 1986. At trial and on brief, respondent asked that we award damages to the United States and against petitioners pursuant to section 6673 in the amount of $ 5,000. The sole substantive issue is whether Park Ridge Enterprises should be recognized as a separate entity, or whether it is a sham, and its gross receipts properly attributed to petitioners. FINDINGS OF FACT Some of the facts are stipulated and are so found. The stipulation, supplemental stipulation, and attached exhibits are incorporated by this reference. Petitioners were residents of Arlington, Texas, at the time they filed their petition. Petitioner Dale Sandvall is a doctor of chiropractic medicine doing business as Chiropractic Associates. Park Ridge Enterprises (Park Ridge) is a trust organized in 1981 in the Turks and Caicos Isles, British *194 West Indies, to assist petitioners with the administrative end of Dale Sandvall's chiropractic practice. Petitioner Dale Sandvall was president of Park Ridge, and signed its 1983 Federal income tax return (Form 1040NR, U.S. Nonresident Alien Income Tax Return) in that capacity. Upon Park Ridge's organization, petitioner Donna Sandvall was appointed secretary, and given signatory authority over its checking account number XXXXXX516-9 at the Metropolitan Savings and Loan Association (Metropolitan) in Dallas, Texas. Dale Sandvall also had signatory authority over that account. Petitioners were the only persons to have such authority. Park Ridge's business address was P.O. Box 14119, Arlington, Texas, a postal box for which petitioners had applied and which they controlled. Park Ridge was organized to provide services to Chiropractic Associates with respect to the latter's business premises and employees. Park Ridge supplied office space to Chiropractic Associates for a monthly rental of $ 5,500. Park Ridge leased this space from Murray management, a real estate concern in the Dallas-Ft. Worth area, for a monthly rental of $ 2,250. Park Ridge provided office staff, [2] saw to *195 it that all bills were paid, and leased office furniture to Chiropractic Associates. While Chiropractic Associates contracted with Park Ridge for such services so that Dale and Donna Sandvall could devote themselves to the practice of chiropractic medicine and the making of a home, respectively, all checks drawn on Park Ridge's account, as were all other documents with respect to Park Ridge were signed by either or both of them. However, Park Ridge did not attend to all of Chiropractic Associates' administrative needs, as payments for at least some of its taxes, postage, and utilities were made from Chiropractic Associates' own account. Checks written on that account were signed by either Dale or Donna Sandvall. There is no evidence that any other person ever acted for or on behalf of Park Ridge during the year 1983. *196 During 1983, a total of 33 checks payable to Park Ridge Enterprises were drawn on Chiropractic Associates' bank account in the aggregate amount of $ 354,132.16. However, Park Ridge's 1983 Form 1040NR, Schedule C showed that it had gross receipts in 1983 of only $ 217,407, from which it subtracted returns and allowances of $ 26,447. The return reflected total deductions of $ 193,475 and an overall loss of $ 2,515. Among the claimed deductions were rent on business property of $ 30,552, wages of $ 59,970, and a continuing royalty of $ 66,000. In response to the return's inquiry concerning whether Park Ridge was a trust with a U.S. business, the return stated that the question was not applicable. [3]
On January 27, 1983, petitioner Donna Sandvall opened account number XXXXX720-6 at Metropolitan in the name of Oak Ridge Trust Organization (Oak Ridge), [4] into which she deposited a $ 32,000 check drawn on the Park Ridge account. On that same day, Donna Sandvall executed a certificate which transferred the assets of this particular Oak Ridge account to herself, whereupon she withdrew the $ 32,000 *197 by having Metropolitan issue her a check in that amount. Petitioner Dale Sandvall engaged in a similar transaction in December 1982 and January 1983. On December 31, 1982, he opened account number XXXXX943-7 at Metropolitan in the name of Oak Ridge and deposited $ 55,000 in the form of a check drawn on the Park Ridge account. On the same day, he executed a certificate which transferred the assets in that account to himself. On January 3, 1983, petitioner Dale Sandvall caused Metropolitan to issue a check to him in the amount of $ 55,025.21. Similar transactions took place on January 20, 1984, April 5, 1984, July 6, 1984, December 17, 1984, and December 31, 1984. At least with respect to the April and December 1984 transactions, the Oak Ridge accounts were opened with checks drawn on the Park Ridge account. Because of petitioners' practice of opening accounts in the name of Oak Ridge, transferring the deposited funds to themselves, then closing the accounts, all within a short period of *198 time, Metropolitan asked petitioners for documentation of their authority to deal with Oak Ridge's funds on such a basis. In response to that request, petitioners presented Metropolitan with Oak Ridge's undated minutes stating that the account opened and transferred on July 6, 1984, was the subject of a gift to petitioner Donna Sandvall. The minutes were signed by petitioner Dale Sandvall as trustee of Oak Ridge. On May 3, 1983, petitioners executed a financial statement in connection with an application for a loan from First City Bank, Arlington, Texas, in which they represented themselves as the owners of all assets held in the name of Park Ridge. OPINION Respondent contends that Park Ridge is a sham entity which should not be recognized for Federal tax purposes, citing Professional Services v. Commissioner,79 T.C. 888 (1982), and Zmuda v. Commissioner,79 T.C. 714 (1982), affd. 731 F.2d 1417 (9th Cir. 1984). Alternatively, respondent contends that Park Ridge is a grantor trust subject to the provisions of sections 671 through 679. Under either theory, respondent argues that Park Ridge's gross receipts are properly attributed *199 to petitioners. Because we agree with respondent as to his first contention, we need not address his second. We first point out that petitioners have gone out of their way to attempt to frustrate this judicial proceeding. In their petition petitioners alleged that respondent "lacked standing to issue the notice of deficiency to Petitioners because [he] is without authority to determine the matter of first impression, that is, whether Park Ridge Enterprises is a legitimate entity." Petitioners alleged that we are without jurisdiction to make a similar determination. After repeated informal discovery requests, [5] respondent on March 7, 1988, sent petitioners a set of 99 interrogatories and a request for production of documents. When these requests were ignored, respondent filed a motion to compel production on April 21, 1988. Respondent filed a similar motion with respect to his interrogatories, along with a request for sanctions, on April 25, 1988. We granted both of respondent's motions in separate orders, reserving a decision on the question of sanctions until the receipt of a status report from respondent concerning petitioners' compliance, and reminding petitioners of section *200 6673's authorization of damages for frivolous positions or dilatory conduct. On May 6, 1988, respondent received from petitioners documents purportedly complying with our Order of April 28, 1988. With one exception, petitioners replied to each of respondent's interrogatories with the following answer: "Petitioners herein are Dale K. and Donna L. Sandvall. The entity named [Park Ridge or Oak Ridge] is not before the Court as a petitioner and, therefore, this question regarding this entity is irrelevant." Likewise, petitioners attempted to circumvent our Order compelling production of documents by providing respondent with a response stating that "the entity named 'Park Ridge Enterprises' is not before the Court as a Petitioner and, therefore, this request regarding this entity is irrelevant." Petitioners did comply with that part of respondent's request for production which sought substantiation of expenses *201 listed on petitioners' Schedule C for 1983. As the transcript reflects, during the trial, petitioners, especially Dale Sandvall, spared no effort to waste the time both of the Court and respondent's counsel. Petitioners made frivolous objections and engaged in a frustrating and time-consuming attempt at gamesmanship. For example, they refused to identify their signatures on photocopies, and when shown original documents refused to say more than that the signatures resembled their own. [6] Petitioner Dale Sandvall also made repeated objections to any inquiry by respondent's counsel concerning Park Ridge or Oak Ridge on the grounds that those purported entities were not before the Court, and that the Court did not have jurisdiction over them. His objections were repeatedly overruled. *202 Respondent made repeated attempts to gain access to Park Ridge's organizational documents in an attempt to establish that petitioners controlled that entity. Petitioners at first objected to any requests for information with respect to Park Ridge on relevancy grounds, but later stated that they had no such documents in their possession. We find it difficult to believe that petitioners would have no records concerning Park Ridge's organization, since they obviously controlled its finances. The rule is well established that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable. * * * This is especially true where * * * the party failing to produce the evidence has the burden of proof * * *. Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Notwithstanding petitioners' failure to produce such records, there is substantial evidence in support of respondent's determination *203 that petitioners exercised complete control over Park Ridge. Petitioners' business premises were subleased from Park Ridge for roughly twice the rent paid by Park Ridge. Both Donna and Dale Sandvall engaged in numerous transactions in which funds were gratuitously transferred from the Park Ridge account to themselves. Petitioners consistently treated the funds in the Park Ridge and Oak Ridge accounts as their own and held themselves out as owners of those assets. We find that the existence of these so-called trusts has no cognizable economic purpose. Zmuda v. Commissioner,79 T.C. at 720. They are, as respondent has determined, mere shams. Accordingly, on this issue we hold for respondent. [7]
*204 Respondent also determined that petitioners were liable for additions to tax pursuant to section 6653(a)(1) and (2), and section 6661, and that petitioners are liable for increased interest pursuant to section 6621(c) of the Internal Revenue Code of 1986. On brief, respondent requested that we award damages pursuant to section 6673. These devices are to encourage compliance and discourage taxpayers from playing the "audit lottery." With respect to these sections of the Code, Congress has directed us "to assert, without hesitancy in appropriate circumstances, the penalties that Congress has provided." H. Rept. 98-861 at (Conf.) 985 (1984), 1984-3 C.B. (Vol. 2) 239. These tools, which Congress has placed at our disposal for efficient management of our docket, are particularly appropriate here. Park Ridge was nothing more than a device used to siphon funds from Dale Sandvall's business through another entity before those funds made their way back to petitioners, all in disregard of the most fundamental rules of Federal income taxation. Petitioners *205 fall squarely within section 6661, both as to the amount by which their Federal income tax liability was understated for 1983 and as to their failure to disclose relevant facts or have substantial authority in their favor. We find that the increased interest of section 6621(c) is also appropriate, as the underpayments are attributable to transactions involving one or more sham entities. See sec. 6621(c)(3)(A)(v). While the burden of proof with respect to such additions and increased interest is on petitioners, see Bell v. Commissioner,85 T.C. 436 (1985), the record contains substantial evidence in support of the application of these additions. In fact, we are surprised that respondent failed to determine the fraud addition under section 6653(b). Petitioners' actions appear to warrant that addition. Damages pursuant to section 6673 are appropriate when it appears "that proceedings before [us] have been instituted or maintained by the taxpayer primarily for delay, [or] that the taxpayer's position in such proceeding is frivolous or groundless * * *." Sec. 6673. These *206 proceedings, and petitioners' conduct in them, are classic examples of such frivolity. Despite repeated warnings at various stages of this proceeding, petitioners have refused to address the merits of their case. Petitioners were evasive as witnesses and their denials of knowledge were outright falsehoods. Their brief attacks respondent's ability, and this Court's jurisdiction, to make determinations with respect to Park Ridge and Oak Ridge. Petitioners present other frivolous arguments concerning petitioners' due process rights, the definition of a deficiency, and petitioners' perceived arbitrary nature of the statutory notice. Petitioners conduct is merely an extension of their conduct in Sandvall v. Commissioner,T.C. Memo. 1989-56. We therefore award damages to the United States in the amount of $ 5,000 pursuant to section 6673. Accordingly, Decision will be entered for respondent.
Footnotes
1. Unless otherwise specified, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Park Ridge apparently administered the payroll only with respect to Chiropractic Associates' support staff. The record contains several checks written on Chiropractic Associates' account to individuals whom the Court infers to be other chiropractors associated with Chiropractic Associates. The record does not contain copies of checks written on behalf of Park Ridge, except to the extent that they were made payable to other entities that petitioners controlled as described below.↩
3. Park Ridge's Form 1040NR designated Park Ridge as "an unincorporated business."↩
4. Whether Oak Ridge was an entity imbued with economic substance is a question which we are not called upon to decide, as respondent has attributed none of its receipts to petitioners.↩
5. During their informal correspondence, petitioners by letter dated January 20, 1988, sent respondent's counsel a list of 33 largely frivolous questions, not including numerous subparts. Respondent's counsel responded to these questions by letter dated March 7, 1988.↩
6. Petitioners' attitude toward this proceeding is exemplified by Dale Sandvall's testimony with regard to the Form 1040NR which was filed on behalf of Park Ridge. At trial, respondent's counsel presented Mr. Sandvall with a copy of that document whereupon the following exchange took place: BY MS. DELGADO: Q Dr. Sandvall, would you please identify for the Court what this document is? A The top of the document says 1040NR. Q And whose name -- what is the name of the taxpayer that is reflected on the first page of that document? A Park Ridge Enterprises. Q Dr. Sandvall, didn't you file this return for Park Ridge Enterprises for the taxable year 1983 with the Internal Revenue Service? A No, I don't believe I did, Your Honor -- pardon -- Ms. Delgado. Q Dr. Sandvall, if you go to the second page of that exhibit, at the bottom of the exhibit there is a place, a signature line -- that is your signature on the exhibit, isn't it? A Well, it appears to perhaps resemble my signature. It is not my signature, however. Q You did sign the original, didn't you? A I really don't know. I don't have an original. * * * MS. DELGADO: * * * Let the record reflect that Respondent is now substituting the copy of the return that was originally marked for identification purposes as Respondent's Exhibit L for the original 1040NR for Park Ridge Enterprises for 1983 that has now been marked for identification purposes as Respondent's Exhibit L. BY MS. DELGADO Q Dr. Sandvall, that is the original 1040NR return for Park Ridge Enterprises for the year 1983, isn't it? A It appears it is. I mean, I don't know how I am supposed to tell it is an original necessarily. It says 1040NR at the top. THE COURT: Why don't you inquire as to a signature? BY MS. DELGADO: Q Dr. Sandvall, would you please direct your attention to the bottom of the second page of that exhibit. Now isn't that -- isn't your -- isn't that your signature at the bottom of the page? A Yes, that appears to be my signature. THE COURT: It either is or it isn't. Which is it? THE WITNESS: I don't recall signing this, Your Honor. THE COURT: Do you recognize your own handwriting? THE WITNESS: It looks like my own handwriting. THE COURT: Do you have any doubt about the fact that it is your handwriting? THE WITNESS: Only that I don't remember doing it. THE COURT: But you do -- aren't you capable of recognizing your handwriting, Dr. Sandvall? THE WITNESS: Yes I am capable of recognizing it and it resembles my handwriting, Your Honor. BY MS. DELGADO: Q And, Dr. Sandvall, isn't that signature in ink, which would reflect that that is the original return? A It is in black ink or pencil; it perhaps is ink. Q You can't distinguish between ink and pencil? THE COURT: Mr. Sandvall, did you sign a return for Park Ridge Enterprises for the year 1983 on Form 1040NR? THE WITNESS: Your Honor, I do not remember. THE COURT: Mr. Sandvall, you are getting very close to being held in contempt of Court. The transcript is replete with such examples.↩
7. The statutory notice taxes to petitioners the gross receipts reported by Park Ridge on its 1983 tax return of $ 217,407. This treatment may not in fact result in a correct tax determination for petitioners. For example, if Park Ridge in fact included in its gross receipts the inflated rent paid by petitioners to it, petitioners' claimed rental deduction of $ 5,500 per month would be cancelled out by the attribution of Park Ridge's rental income while the actual rental paid for the office space of $ 2,250 would not be given effect. The correct tax treatment would appear to be to ignore the separate existence of Park Ridge, eliminating any transactions between it and petitioners. If, however, respondent's determination in the statutory notice is erroneous, resulting in excessive net income being taxed to petitioners, that error cannot be corrected on this record. It is a result brought on by the contumacious conduct of petitioners.↩