RAYMOND KERN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kern v. Commissioner
Docket Nos. 10556-84; 10720-85.
United States Tax Court
T.C. Memo 1988-171; 1988 Tax Ct. Memo LEXIS 199; 55 T.C.M. (CCH) 667; T.C.M. (RIA) 88171; April 25, 1988. *199 Petitioner made donations to a congregation of the Universal Life Church. Petitioner was not a minister or director of such congregation. Held: Petitioner has not proven that the congregation is an organization to which charitable contributions as defined in section 170(c) may be made. Held further, the value of other donations determined. Heard further, petitioner is not liable for additions to tax under section 6653(a)(1) and (2). Held further, petitioner is not liable for damages under section 6673. Raymond Kern, pro se. Rose E. Gole, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACTS AND OPINION WHITAKER, Judge: By statutory notices dated January 27, 1984, and January 25, 1985, [1] respondent determined deficiencies in and additions to petitioner's [2] *200 Federal income tax for 1981 and 1982 as follows: Addition to Tax
Under Section
Year
Deficiencies
6653(a)(1) [3]
6653(a)(2)
1981
$ 1,422
$  71.10
*
1982
5,065
253.25
**
At trial respondent filed his written motion seeking damages under section 6673. After concessions [4] the issues remaining for decision are: (1) whether petitioner is entitled to a charitable deduction for donations made to the Universal Life Church, Charter No. 39043; (2) whether petitioner is entitled to a deduction of $ 400 for used clothing donated to the Salvation Army; (3) whether petitioner is liable for additions to tax for negligence or willful failure to follow rules or regulations; and (4) whether petitioner is liable for damages under section 6673. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and attached *201 exhibits are incorporated herein by this reference. Petitioner resided in Brooklyn, New York, at the time his petition was filed. During the years involved, petitioner was employed by the New York Telephone company. Petitioner's wife was employed by the Board of Education of the City of New York as an operator in 1981 and a college assistant in 1982. On September 17, 1980, Charter No. 39043 was issued to a congregation of the Universal Life Church organized at 1474 East 32nd Street, Brooklyn, New York (Brooklyn). The directors of this congregation were elected on October 1, 1980, and were as follows: president, Anthony C. Rubino (Rubino); vice president, Alfred Vizzotti; secretary, Anthony Rubino, Jr.; treasurer, Theresa Rubino. [5] *202 The congregation met at Rubino's residence which was its place of organization and also its parsonage. October 2, 1980, the board of directors resolved that Brooklyn [2] * * * shall pay the rent/mortgage of the parsonage at 1474 East 32 Street, Brooklyn, New York 11234, as well as any and all expenses to run and operate said parsonage such as telephone, electric, heat, insurance, taxes, and etc. * * * [4] By virtue of the U.L.C., Inc. Charter, members of the Board of Directors of [Brooklyn] will have complete discretionary power to administer any and all funds accrued in the name of [Brooklyn].
At a meeting on October 8, 1980, Brooklyn's board of directors resolved that a retreat be started in Shohola Township, Pike County, Pennsylvania. [6]
Brooklyn had, at one time or another, bank accounts at three New York City area banks over which Rubino had signatory authority. [7] *203 These accounts were opened by the Universal Life Church, Inc. in Modesto, California (Modesto). [8] Persons holding signatory authority over these accounts were Rubino, George Lambdin, who was Brooklyn's assistant pastor, and two representatives of Modesto. Petitioner donated $ 4,257.90 and $ 19,261.81 [9] to Brooklyn in 1981 and 19982, respectively. These donations were made entirely in cash. All petitioner's donations were deposited in Brooklyn's account at either the Republic National Bank or European National Bank. All of petitioner's donations for 1981, and part of his donations for 1982 went toward the purchase of a $ 10,000 certificate of deposit [10] that was later used to open a free-standing church [11] in Nassau County on Long Island. This building was purchased around the end of 1981 using the certificate of deposit as a down payment. Petitioner's contributions, insofar as they were not used toward the purchase of the certificate of deposit, were used to refurbish the building in Nassau County. The building was gutted in order to make it an appropriate place for *204 services to be held. Petitioner personally assisted in remodeling the building. Petitioner attended services and other meetings in the building in 19981 and 1982. Brooklyn ceased using the building at the end of 1982. The congregation was behind in its mortgage payments and sold the building with the permission of its mortgagee. Prior to its sale, the building was used only to hold services and meetings, although congregations other than Brooklyn met in it. Petitioner had no control over any of Brooklyn's bank accounts, and did not personally benefit from his contributions to those accounts. [12] He was never an ordained minister of Brooklyn or Modesto. Neither was he ever on Brooklyn's board of directors. Petitioner *205 attended approximately 12 of the congregation's meetings from the time his donations started in October 1981 until the end of 1982. Petitioner gave all of his contributions directly to Rubino. During 1982, petitioner and his wife donated four bags of used clothing to the Salvation Army. Petitioner's wife valued the donation at $ 400, a value accepted by the Salvation Army and written on the receipt given for the donation. OPINION Section 170(a) provided that a deduction shall be allowed for any charitable contribution which is made within the taxable year. The term "charitable contribution" is defined in section 170(c). [13] *206 Petitioner makes two arguments in support of the deductibility of his contributions to Brooklyn: (1) that Brooklyn is covered by Modesto's tax-exempt status; and (2) that Brooklyn was a tax-exempt organization in its own right. Petitioner's first argument may be disposed of quickly. This and other courts have held that Modesto's exemption is not a group exemption. Hall v. Commissioner,729 F.2d 632 (9th Cir. 1984), affg. a Memorandum Opinion of this court; Davis v. Commissioner,81 T.C. 806 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985). Further, and to the extent petitioner argues that he in fact made his donations to Modesto, it is irrelevant that the congregation's bank accounts were opened by Modesto or even in Modesto's name. They were used only by Brooklyn, and while representatives of Modesto had signatory authority over those accounts, there is no evidence that such authority was ever exercised. Petitioner's first argument is *207 therefore without merit. [14]
Neither do we find that Brooklyn is a tax-exempt organization in its own right. In Stephenson v. Commissioner,79 T.C. 995 (1982), affd. 748 F.2d 331 (6th Cir. 1984), we held that for contributions to an organization to be qualified under section 170(c), that organization must meet the section 501(c)(3) organizational and operational tests. Stephenson v. Commissioner, supra at 1002. Here, as there, neither of the tests is satisfied. Petitioner has the burden of proving his entitlement to deductions for charitable contributions; Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933); which, like all deductions from gross income, are a matter of legislative grace. Deputy v. duPont,308 U.S. 488 (1940). While the tax exempt status of Brooklyn (or lack thereof) is not put directly in issue by respondent's disallowance of petitioner's charitable deductions, petitioner must prove that he has indeed made a charitable contribution as defined in section 170(c). The regulations state at section 1.501(c)(3)-1(b), Income Tax Regs., that in order for an *208 organization to meet the organizational test, its articles of organization must meet the requirements of that section. Petitioner has not produced Brooklyn's articles of organization; we therefore have no evidence upon which to base a finding that Brooklyn satisfies the organizational test. Neither has petitioner provided any evidence upon which we may base a finding that Brooklyn satisfied the operational test. Petitioner has therefore not met his burden of proof. Although petitioner did not introduce any of Brooklyn's organizational documents, he did produce minutes of meetings of the board of directors. The board of directors resolved on October 2, 1980, that it would pay all expenses incurred in connection with maintenance of the parsonage. These payments were to be in the unfettered discretion of the board, a majority of which consisted of Rubino's family. The board of directors resolved to pay similar expenses for Brooklyn's retreat to be established in Pike county, Pennsylvania. Section 170(c)(2)(C) prohibits a contribution from qualifying as a charitable contribution if any part of the net earnings of the donee organization inures to the benefit of any private person. *209 Such inurement is not limited to the distribution of net profit as dividends, Unitarian Mission Church v. Commissioner,74 T.C. 507, 512-513 (1980), affd. without published opinion 647 F.2d 163 (2d Cir. 1981); Lowry Hospital Association v. Commissioner,66 T.C. 850, 857 (1976); and is strongly suggested when an individual with control over an organization's affairs, or his family, is the principal recipient of the organization's disbursements. Cf Church of Eternal Life v. Commissioner,86 T.C. 916, 927 (1986); Basic Bible Church v. Commissioner,74 T.C. 846, 857 (1980). Brooklyn's board of directors granted itself unfettered discretion in the disposition of Brooklyn's funds. The board also resolved that a substantial part of these funds was to be spent in the maintenance of Rubino's residence under the guise of its status as Brooklyn's parsonage. The absence of evidence of compliance with the operational requirements for classification as an exempt organization, coupled with this strong suggestion of inurement mandates a determination of this issue in favor of respondent. Respondent also disallowed a deduction in the amount of $ 400 for clothing donated to the Salvation Army *210 by petitioner in 1982. In general, "if a charitable contribution is made in property other than money, the amount of the contribution is the fair market value of the property at the time of the contribution * * *." Sec. 1.170A-1(c)(1), Income Tax Regs. Petitioner assigned a value of $ 400 to the four bags of clothing donated. [15] Petitioner bears the burden of proving his donation's fair market value. See Rule 142(a); Welch v. Helvering, supra.We have no doubt that petitioner's donation was of some value, but given no more than his own testimony, we are far from convinced that it approached $ 400. Rather, we think a deduction of $ 100 is more appropriate. See Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Petitioner also bears the burden of proving that he is not liable for an addition to tax under section 6653(a)(1) and (2). Bell v. Commissioner,85 T.C. 436, 441 (1985). Petitioner attended approximately 12 meetings in the more than 14 months during which he made donations to Brooklyn. These meetings are the only activities of which petitioner *211 has made us aware. However, many of these services were held in a building purchased specifically to function as a place to hold services and meetings. Petitioner attended services in this building in 1981 and 1982. Petitioner was told by Rubino that his contributions were used to purchase and furnish that building, and his contributions were so used. Petitioner testified to his belief in the principles of the Universal Life Church, vague as those principles may be. Further, it is undisputed that during the years in issue Modesto was a tax-exempt organization, and petitioner's belief, based upon Rubino's representations, that the exemption covered Brooklyn, was reasonable. On the instant record we find for petitioner on this issue. At trial, respondent filed a written motion for damages pursuant to section 6673. Respondent argues that this case is no different from the many cases in which taxpayers have set up private "churches," and made frivolous claims when it came their time to litigate. We find this is not to be the case here. We have found as a fact that petitioner did not have control over the funds that he donated, and do not believe that he derived personal benefit *212 from them. He has made none of the arguments commonly associated with tax protestors. While respondent gives examples of other of petitioner's arguments which he asserts to be frivolous and dilatory, those arguments by themselves have caused neither respondent nor the Court to expend a great amount of time or effort. [16] We therefore conclude that section 6673 damages are inappropriate under the instant circumstances. In accordance with the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Docket Nos. 10556-84 and 10720-85 were consolidated by this court's Order of April 29, 1987. ↩
2. Respondent's statutory notices are addressed to petitioner and his wife, Thelma Kern, who signed a joint return with petitioner. However, Thelma Kern has not petitioned this Court. 3. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on $ 1,406 ↩
**. 50 percent of the interest due on $ 5,065 ↩
4. Petitioner has conceded that he is not entitled to deduct $ 56.35 for water rents paid during 1981. Respondent concedes that petitioner did not receive $ 815 of unreported income in 1981, an issue first raised in respondent's answer. ↩
5. Anthony Rubino, Jr. and Theresa Rubino are the son and daughter of Anthony C. Rubino. The Board of Directors of Brooklyn also resolved that the order of succession to the office of president was to be secretary, followed by treasurer, followed by vice president. 6. This retreat was never established. ↩
7. Although requested to do so by respondent, both formally and informally, neither petitioner nor Rubino produced any of Brooklyn's records, Rubino explaining that all records had been shipped to the Universal Life church, Inc., in Modesto, California. 8. At all times relevant to this proceeding, Modesto was an organization exempt from taxation. However, that status was revoked on September 4, 1984. Announcement 84-90 (Sept. 4, 1984)1984-36 I.R.B. 32. The revocation of the exemption status was recently upheld in Universal Life Church v. United States,13 Cl. Ct. 567↩ (1987). 9. Petitioner's receipts for donations to Brooklyn in 1982 total $ 19,261.81, although respondent disallowed only $ 19,017.71 for that year. ↩
10. Rubino testified that all of petitioner's 1981 contributions and "most" of his 1982 contributions went toward this certificate of deposit. This is obviously a mistake, since such a figure would have been greater than $ 10,000. ↩
11. Petitioner described "free-standing" as outside of Rubino's home, retaining that home as a parsonage. ↩
12. Upon questioning by the Court, it became apparent at trial that petitioner's contributions to Brooklyn were in the neighborhood of 45 to 50 percent of the gross income of petitioner and his wife. Respondent did not raise this issue at any time after trial and in view of our holding, we need discuss it no further. ↩
13. Sec. 170: (c) CHARITABLE CONTRIBUTION DEFINED. -- For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of -- * * * (2) A corporation, trust, or community chest, fund, or foundation -- * * * (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * *; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual * * *. ↩
14. See section 601.201(n)(8), Statement of Procedural Rules, for requirements for obtaining a group exemption. ↩
15. At trial, the Court took judicial notice of the practice of benevolent charities accepting whatever value a donor places on his donation. ↩
16. Respondent complains of petitioner's failure to comply with both formal and informal discovery requests concerning Brooklyn's bank documents. However, section 6673↩ is not intended to address such complaints, and respondent should have sought relief via Rule 104.