DONA H. SLY AND JOANN E. SLY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sly v. Comm'r
Docket Nos. 23814-82; 538-85; 42908-85. United States Tax Court
T.C. Memo 1988-443; 1988 Tax Ct. Memo LEXIS 482; 56 T.C.M. (CCH) 209; T.C.M. (RIA) 88443; September 15, 1988. *482 Held: Petitioners have not shown that respondent's reconstruction of their income for 1977 and 1978 and the determination of an addition to tax for negligence under section 6653(a) for those years are incorrect. Held further: as petitioners have not substantiated some expenditures for 1980, 1981, and 1982 as required by section 274(d), those expenditures will be disallowed as deductions. Held further: petitioners have proven that respondent erred in attributing to them the income of certain corporations in which petitioners had an interest. Held further: respondent's motion for default judgment for petitioners' failure to comply with an order of this Court will be granted in part. Held further: the addition to tax for fraud in 1980, 1981, and 1982 is sustained. Lowell H. Becraft, Jr., for the petitioners. Linda J. Wise, for the respondent. WHITAKER
MEMORANDUM OPINION WHITAKER, Judge: By three separate statutory notices, respondent determined deficiencies [1] *483 in and additions to petitioners' Federal income tax for the years and in the amounts as follows: Additions to Tax
Section
Section Section
Section
Year
Amount
6653(a) [2]
6653(b)
6653(b)(1)
6653(b)(2)
Docket No. 32814-82
1977
$  6,496.70
$  324.84
-
-
-
1978
3,383.63
169.18
-
-
-
Docket No. 538-85
1980
55,884,87
-
$27,942.44
-
-
Docket No. 42908-85
1981
22,061.05
-
11,030.53
-
-
1982
28,100.01
-
-
$ 14,050.01
50% of int. due
on $ 28,100.01 For convenience our Findings of Fact and Opinion are combined.
Background
Respondent reconstructed petitioners' income for 1977 and 1978 utilizing the bank deposits method, adding to their income unexplained deposits to their individual checking account plus payments made on behalf of petitioners by the Universal Church of Jesus Christ (the Church), an incorporated entity. Respondent also reconstructed petitioners' income for 1980, 1981, and 1982 using indirect means. Respondent added to petitioners' taxable income for those years the bank deposits *484 of the Church, the Bureau of Collections, [3] Industrial Loan Co., Inc. (ILC), Used Car Rentals, Inc. (Car Rentals), and Uni-King, Inc. (Uni-King). [4] Respondent assets that the four corporations were controlled by, and were the alter egos of, petitioner Dona Sly (Sly). Respondent also disallowed all of petitioners' Schedule A and Schedule C deductions for 1980, 1981, and 1982. [5] Finally, respondent determined that petitioners are liable for an addition to tax for negligence pursuant to section 6653(a) for 1977 and 1978, and an addition to tax for fraud pursuant to section 6653(b) for 1980, 1981, and 1982. Petitioners bear the burden of proof as to every issue except the fraud addition. Rule 142. This case is presently before the Court for disposition on the basis of an incomplete record made at the trial held on February 18-20, 1986, and on respondent's motion to dismiss and for default judgment on the grounds that petitioners have failed *485 to comply with our order of May 16, 1988 (the May 16 Order). This Order was designed to require the parties to complete the record by supplemental stipulation. In support of his motion, respondent has attached photocopies of correspondence reflecting the efforts of respondent's counsel and agents to meet with Sly and his accountants in an effort to work out further stipulated facts. Petitioners' response to the motion merely restates their arguments based on Moline Properties, Inc. v. Commissioner,319 U.S. 436 (1943), to the effect that the separate corporate existence of the several corporations should be respected. The record in this case consists of a 481-page transcript and stipulated exhibits which may be stacked to a height of nearly five feet. The majority of trial testimony concerns the related declaratory judgment case of Universal Church of Jesus Christ v. Commissioner,T.C. Memo. 1988-65, in which we held that the Church was not an organization exempt from tax as described in section 501(c)(3). Many of the exhibits are bank statements, cancelled checks and deposit slips for the several corporations (including the Church and the Bureau of Collections) in which Sly *486 had an interest. Bank records with respect to ILC, Uni-King, and Car Rentals consume little space in the record compared with the records for the Church and especially the Bureau of Collections. Examination of the bank records for those entities has been a relatively simple task, thanks to their brevity. As explained later in this opinion, we are persuaded that checks written on the accounts of those three corporations represent legitimate business expenses. This stands in sharp contrast to the overwhelming volume of bank records for the Bureau of Collections. At best, the Court can only choose random examples of checks drawn on that account, some of which appear to be for personal expenses such as charge card payments. While there is some internal organization to these documents, there is virtually no indication of how they relate to the disputed issues in this case. The confusion and complexity has been made worse by the failure of the parties to cooperate. The Court has attempted to lessen the burden imposed upon it be the state of this record through first requesting and then requiring the parties, particularly petitioners, to take specific steps to make our decision-making *487 process reasonable and practical. Their failure to do so leaves disposal in accordance with this opinion the only practical choice left for the Court. Some of the facts have been stipulated and they are so found. At the time of the filing of the petitions in this case, petitioners were residents of Etowah County, Alabama. The Findings of Fact in T.C. Memo. 1988-65 and the Opinion itself insofar as it bears on the relationship between petitioners and the Church are incorporated herein by reference. Following the trial and in anticipation of the issuance of the Memorandum Opinion in the declaratory judgment action, the Court wrote to the parties on January 7, 1988, calling to their attention the deficiencies in the record as it bears on the issues in this case and requesting supplemental stipulations. That procedure was discussed with the parties at the conclusion of the trial. When our informal request failed to produce the expected cooperation by petitioners' counsel and by petitioners with respondent's counsel, the Court on May 16, 1988, issued an order directing petitioners to provide the Court and respondent's counsel with a schedule setting forth petitioners' gross income *488 for each year in issue and the source from which derived. Such schedule shall also set forth each deduction to which petitioners claim to be entitled. For each such deduction petitioners shall show the amount of the expense, the payee, and the basis for the deduction. Petitioners shall also provide specific cites to the record by exhibit number and page number (if appropriate) for each deduction so claimed.
In certain respects, our May 16 Order required no more of petitioners than that which was alreday required by section 274(d). [6] *489 However, we have assumed that in the voluminous receipts, vouchers, etc. submitted by petitioners there are some items which may be related to deductions to which section 274 does not apply. Petitioners have filed nothing with the Court pursuant to our May 16 Order, which in itself constitutes a violation of that order. Following numerous efforts by respondent's counsel and its agents, petitioners did provide respondent's counsel with what purports to be a series of schedules of Sly's expenses for travel, meals, and lodging paid during the years 1977 through 1982, both inclusive. [7] *490 Copies of these schedules are attached to respondent's motion. The names of only a few of the payees of these disbursements are indicated. The purpose of the disbursement is only rarely indicated and no references are made to the record in this case. However, these schedules may not be made part of the record as evidence, as a filing with respondent in and of itself does not constitute a part of the record on which we can base findings of fact. Were these schedules to be made a part of the record, the verification of these receipts and expenses, all of which are contested by respondent, is a task beyond the capability of this Court by reason of the confused state of the record and the lack of essential facts. The schedules provided to respondent offer precious little assistance to petitioners' case. For example, information that Sly purchased $ 18.69 worth of oil and gas on March 27, 1981, even if the record somewhere has documentation of that purchase, does not without more entitle petitioners to a deduction. The same may be said of an expenditure on April 20, 1981, of $ 162.64 for "Motel for 14 days Florence Al., 4/20." [8] Even in those few instances where for example the name and location of a motel is given, the particular purpose for which the expenditure was incurred was not described. Also some personal expenditures are included, such as on July 26, 1982, *491 "medicine for JoAnn" in the amount of $ 12.01. Moreover, petitioners provided respondent with schedules of expenses for 1977 and 1978, even though petitioners claimed, and respondent disallowed, no Schedule C deductions for those years. It is, of course, possible, even probable, that some of the items shown on the 1977 and 1978 schedules reflect reimbursement to petitioners for traveling expenses incurred by Sly for the Church on its business activities or similar expenses paid by the Church to third parties which have been taxed to petitioners. But there is no way in which we can supply the information which should have accompanied those schedules if they had been filed with the Court.
Sanctions
Pursuant to Rule 123(a), the Court may hold any *492 party in default "When any party has failed to plead or otherwise proceed as provided by these Rules or as required by the Court * * *." Under Rule 123(b), our discretion is even broader, as a case may be dismissed "For failure of a petitioner properly to prosecute or to comply with these Rules or any order of the Court or for other cause which the Court deems sufficient * * *." We have consistently given Rule 123 broad application, Stringer v. Commissioner,84 T.C. 693, 706 (1985), affd. by unpublished order 789 F.2d 917 (4th Cir. 1986), and have applied it when a party (i) failed to stipulate, Long v. Commissioner,742 F.2d 1141 (8th Cir. 1984), affg. per curiam an unpublished order of this Court; (ii) failed to comply with Court-ordered discovery, Rechtzigel v. Commissioner,79 T.C. 132 (1982), affd. per curiam 703 F.2d 1063 (8th Cir. 1983); or (iii) failed to appear at trial, Ritchie v. Commissioner,72 T.C. 126 (1979). This case is similar to Stringer v. Commissioner, supra, in many material respects. There, the taxpayer made contentions "so *493 ill-defined as to be unfathomable by the Court and * * * supported, if at all, by vague testimony and a mass of incomprehensible documents." Stringer v. Commissioner, supra at 705. Recognizing that specific clarification would be required in order to reach a decision, we "issued an oral directive to petitioners' counsel (with respect to petitioners' brief) specifying the type of findings of fact the Court would need to understand petitioners' legal position." Stringer v. Commissioner, supra at 705. We found the taxpayers' failure to file any brief a violation of Rule 151 as well as the Court's oral directive. In dismissing the case pursuant to Rule 123(b) and finding for respondent on all issues as to which the taxpayers had the burden of proof, we made the following statement suitable to this case: Petitioners have attempted to shift to the Court the burden of sifting through a 598-page transcript and a large number of exhibits, many of which are suspect in appearance, in order to ferret out petitioners' legal positions and whatever facts may support those positions. We will not accept this burden, nor should we. Our pending docket is well documented, and we can ill afford the *494 time or the manpower to perform duties that properly rest with petitioners. [Stringer v. Commissioner, supra at 705.]
Equally appropriate is our discussion in Evergreen Cemetery Association v. Commissioner,25 B.T.A. 544, 551-512 (1932), where we stated that The proper trial of a case * * * requires thorough preparation * * * and the marshaling of the evidence * * *. This is not accomplished by dumping into the hands of the [Tax Court] a number of books of account and other similar evidence. * * * The [Tax Court] should not be asked to ferret out the correct answer to technical or difficult questions of law and fact from unexplained, uncoordinated evidence. * * * By Order dated August 24, 1988, we formally closed the record in this case. Petitioners, by ignoring our May 16 Order, have forfeited any rights which they might otherwise have had to seek to supplement the record. Irrespective of their burden of proof, as one of several sanctions for failing to carry out our May 16 Order, we have by Order entered on the date of this Opinion deemed respondent to have established conclusively that the deposits in the Church and Bureau of Collections accounts during the years 1980, 1981, *495 and 1982 are income taxable to petitioners. As a further sanction, we have deemed admitted by petitioners the factual and conclusory allegations relating to the additions to tax under section 6653(b) which are set forth in paragraphs 6(a) - (c) and (e) - (s) of respondent's answer filed on March 11, 1985, in docket No. 538-85 and in paragraphs 6(a) - (d) and (f) - (u) of respondent's answer filed on January 17, 1986, in docket No. 42908-85, except insofar as those allegations concern deposits into the accounts of ILC, Uni-King, and Car Rentals. As a final sanction we expressly decline to examine, and we exclude from this record, any of the unclassified copies of bank statements, cancelled checks, letters, and the like which are in this record (except for those few items pertaining to ILC, Car Rentals, and Uni-King). Thus, we will not examine those documents in order to try to ascertain whether any of the church payments on behalf of petitioners in 1977 and 1978 or any of the disallowed Schedule C deductions in the later years are explained. We further decline to examine these documents in an attempt to ascertain whether any of the otherwise unexplained deposits in the bank accounts *496 of petioners during 1977 and 1978 and in the accounts of the Church and the Bureau of Collections during 1980, 1981, and 1982 should not be treated as taxable income to petitioners in those years. [9]
The organization and classification of expenditures which are claimed to be deductible is an audit task, and is more appropriate for the parties than the Court. See Slawek v. Commissioner,T.C. Memo. 1987-438. Our May 16 Order was our final attempt to persuade petitioners to document Sly's deduction for travel and entertainment as required by section 274(d). Petitioners have not done this. Respondent's motion is entirely appropriate and in our Order granting *497 respondent's motion, we have excluded from the record this documentary evidence. To the extent that we do not dispose of the issues on the basis of the burden of proof, we do so as a result of our Order entered this day under Rule 123 as requested by respondent in his said motion.
Years 1977 and 1978
Respondent has not challenged the separate corporate existence of the Church during the years 1977 and 1978. Our Memorandum Opinion in the declaratory judgment action holds simply that that corporation was not an exempt organization because it was operated for other than exempt purposes. Among other matters, we found that during 1977 almost $ 8,000 of petitioners' personal expenses were paid out of the Church's maintenance account. During 1978 other funds were paid to or for the benefit of petitioners. Corporate payments for a shareholder's personal benefit may be taxable to the shareholder as a constructive dividend. Challenge Manufacturing Co. v. Commissioner,37 T.C. 650 (1962). Such a result does not necessitate a finding that a corporation is an individual's alter ego, in which case Moline Properties, Inc. v. Commissioner,319 U.S. 436 (1943), has little or no application. Because *498 of petitioners' failure to maintain adequate books and records both for their own business activities and for the Church, and our findings that the Slys used the Church's funds frequently for personal purposes, petitioners must show why the payments by the Church for their account in these 2 years should not be treated as constructive dividends to them. Reliance on Moline Properties is simply no answer. Petitioners used the Church and the unincorporated Bureau of Collections for whatever activities Sly engaged in from time to time and used the funds in their bank accounts indiscriminately for their support. He exercised complete dominion and control over all assets of the Church. In many instances, Sly used these two entities as his corporate pocketbook. It was up to petitioners to show that the deposits into the Church and Bureau of Collections accounts did not represent earnings of Sly in his various activities taxable to him personally rather than to the Church. Thus, irrespective of the sanctions imposed upon Sly, we would hold for respondent as to all issues involving Sly, the Church, and the Bureau of Collections. There is neither testimony nor exhibits to explain the source *499 of the deposits in petitioners' individual checking account during 1977 and 1978 which respondent determined to represent omitted income in these 2 years. Neither is there any testimony showing that respondent erred in taxing to petitioners payments by the Church for their benefit. To the extent that some documentary evidence bearing on this issue might be found in the exhibits, such evidence is not before us by reason of our sanctions against petitioners. Thus respondent's determination of omitted income in those 2 years is sustained. Petitioners have not discharged their burden of proof. Petitioners also bear the burden of proof regarding respondent's determination that they are liable for an addition to tax pursuant to section 6653(a) for 1977 and 1978. Bell v. Commissioner,85 T.C. 436, 441 (1985); Bixby v. Commissioner,58 T.C. 757, 791 (1972). Petitioners have presented no evidence in this regards, and have made no argument. Respondent is, therefore, sustained on this issue.
Years 1980, 1981, and 1982
Respondent disallowed all of petitioners' Schedule A itemized deductions for 1980 and 1982 [10] on the grounds that petitioners had not shown that they were entitled to such *500 deductions. It is sufficient for us to say that petitioners have not borne their burden of proving their entitlement to those deductions. Welch v. Helvering,290 U.S. 111 (1930); Rule 142(a). However, we would further note that the majority of petitioners' itemized deductions were claimed to be charitable contributions to the Church, which as we decided in the related declaratory judgment action, is not an organization to which deductible contributions may be made. We found in the declaratory judgment action that Sly operated a Bureau of Collection department of the Church and traveled extensively for it at least into the fall of 1981. When this activity ceased, Sly began working as an independent contractor for Help Educate Loyal Parents, Inc. (HELP), which provided drug books, drug kits, and audiovisual aids to police and sheriff's departments primarily in the southeast. [11] To assist in financing HELP's operations, Sly solicited advertisements from local merchants to be published in HELP's published materials. Several of the persons and/or businesses contacted by Sly while soliciting advertisements were either *501 disinterested in purchasing advertising space or financially unable to do so. As HELP was a for-profit corporation, it had no means of accepting charitable contributions. In order to provide a vehicle for accepting donations, the Church established the Universal Fight Against Narcotics Club (FAN Club). Amounts paid to HELP for advertisements were collected by petitioner and sent to HELP at the end of each week. The donations to the FAN Club were deposited into the Bureau of Collections account. [12] Petitioner would then write a check from that account to HELP to cover the amounts donated. The sale of advertisements in HELP's publications necessitated Sly's travel throughout Georgia, Alabama, and Mississippi. To *502 keep track of his expenses, he put each receipt in an envelope. Sly would seal an envelope full of receipts every week or two. These receipts were then used to prepare his Schedules C for these years. [13] In certain instances HELP would place an ad in its publications without charge in exchange for free lodging provided to Sly be a hotel or motel. In those instances, Sly made up his own receipt. While we are convinced that Sly incurred section 162 deductions in working for HELP, section 274(d) is quite specific and we cannot estimate on the theory of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Kozera v. Commissioner,T.C. Memo. 1986-604; Robine v. Commissioner,T.C. Memo. 1986-350. Petitioners have not given us the necessary tools with which to work. Respondent's other adjustments in the statutory notices covering these 3 years increased petitioners' taxable income by unexplained deposits in ILC, Car Rentals, and Uni-King bank accounts. The facts with respect to ILC, Care Rentals, and Uni-King *503 are substantially different from the Church. ILC was operated by petitioners' son Ben Sly, who began participating in the business after its purchase in 1972. Sly was the sole shareholder of ILC, but played no part in its operation until the year before its closing in 1982. Respondent has determined that ILC was Sly's alter ego. In support of his determination, respondent contends that the funds of ILC and other corporations controlled by Sly were used to pay petitioners' utilities and other personal expenses. However, ILC's bank records reveal that little, if any, of ILC's funds were used for petitioners' personal expenses and respondent has not sought to tax to petitioners these specific amounts. An examination of some of the canceled checks stipulated into the record reveals that utility bills paid by ILC to South Central Bell and Alabama Power Co., were not for petitioners' personal residence as the telephone number and power company account number do not match those stipulated for petitioners' residence. During the years at issue ILC maintained two bank accounts at the Central Bank of Alabama, N.A., and an account at the Alabama city Bank of Gadsden. Those accounts maintained *504 at the Central Bank of Alabama were operating accounts while the account maintained at Alabama City Bank was a reserve or investment account. [14] While checks for cash in amounts up to $ 1,200 were drawn from ILC's operating accounts, the accounts were also used to pay utility bills, the salary of Ben Sly, and make disbursement of loan proceeds. However, the vast majority, if not all of the checks drawn on the investment account were either to cash, Uni-King, Car Rentals, the Bureau of Collections, or other corporations controlled by petitioner. Respondent has taken these expenditures into account as explained bank deposits in his reconstruction of petitioners' income; they have not been doubly included in petitioners' income. We find ILC's bank records sufficient to overcome respondent's attribution of its gross income to petitioners. ILC was not a dummy or sham corporation set up to receive income as an agent for Sly, but rather carried on a business from which petitioners were relatively detached. Sly was one of four or five shareholders of Universal Investment, *505 Inc. (Universal Investments), which was formed in 1977. [15] The day-to-day operations of Universal Investments were run by Sly's stepson, Bobby Jones. The record does not reflect the activities of Universal Investments other than that "it was to invest in business." [16] Universal Investments owned 60 percent of the stock of Uni-King which was formed in 1978. Uni-King was in business to buy used cars to rent to the public with an option to purchase. The corporation also ran a service station. Contrary to respondent's assertion, the bank records of Uni-King reflect that many of its expenditures were business related. They corroborate the testimony of Bobby Jones concerning the purchase of used automobiles at auction and other business expenditures. However, many of the checks produced are consistent with respondent's position that funds were used for other than business purposes, although it is not clear on this record for whose benefit the expenditures were made. Uni-King's bank records contain checks drawn to Sears, Master Charge, and J. C. Penney. These checks were all signed by Bobby Jones, and no checks drawn on the account of Uni-King were signed by Sly until February 1980. *506 All of the checks signed by Sly appear on their face to have a valid business purpose. Respondent also attributed to petitioners the bank deposits of Car Rentals. The record contains little in the way of an explanation of this corporation's operations, except that it was run by a person named Johnny Williamson. The record is also unclear as to whether, or to what extent, Sly had an interest in this corporation. Most of the checks drawn on the bank account of Car Rentals appear on their face to be business related, representing expenditures made to auto parts stores and automobile actions. None of the checks were signed by Sly, and while there was an extensive amount of activity in the account, none of the checks were apparently for petitioners' personal use. With respect to these three corporations, we conclude that the evidence offered by and on behalf of petitioners is sufficient to show that respondent's determination in the statutory notice that the income from these corporations should be attributed to petitioner *507 is in error. Respondent having produced no evidence on these matters, we find for petitioners with respect thereto.
Additions to Tax for Fraud Under section 6653(b) respondent has the burden of proving fraud by clear and convincing evidence. Section 7454(a); Rule 142(b). To meet this burden, respondent must show that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner, T.C. 1111 (1983).
The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1382 (8th Cir. 1978); Estate of Pittard v. Commissioner,69 T.C. 391 (1977). Fraud is not to be imputed or presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970); Otsuki v. Commissioner,53 T.C. 96 (1969). However, fraud may be proven by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. Rowlee v. Commissioner, supra. The taxpayer's entire course of conduct may be examined to establish the *508 requisite fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, supra at 105-106 (1969).
The intent to conceal or mislead may be inferred from a pattern of conduct. See Spies v. United States,317 U.S. 492, 499 (1943). A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an intent to conceal, justified the inference of fraud. See Holland v. United States,348 U.S. 121, 137 (1954); Otsuki v. Commissioner, supra.Fraud is also indicated when respondent proves a plan to convert corporate earnings to a taxpayer's personal use under the guise of corporate expenses. Meyers v. Commissioner,21 T.C. 331 (1953). However, the mere failure to report income is not sufficient to establish fraud. Merritt v. Commissioner,301 F.2d 484, 487 (5th Cir. 1962). Fraud may not be found under "circumstances which at most create only suspicion." Davis v. Commissioner,184 F.2d 86, 87 (10th Cir. 1950); Katz v. Commissioner, 90 T.C.     (June 15, 1988).
Other badges of fraud which may be taken into account include: the making of false and inconsistent statements to revenue agents, Grosshandler v. Commissioner,75 T.C. 1, 20 (1980); *509 the filing of false documents, Stephenson v. Commissioner,79 T.C. 995, 1007 (1982), affd. 748 F.2d 331 (6th Cir. 1984); understatement of income, inadequate records, failure to file tax returns, implausible or inconsistent explanations of behavior, concealment of assets and failure to cooperate with tax authorities. Bradford v. Commissioner,796 F.2d 303 (9th Cir. 1986), affg. a Memorandum Opinion of this Court. Unlike Rule 123(b), Rule 123(a) does not, by its own terms, operate only against petitioners or parties with the burden of proof. Respondent argues that petitioners' failure to comply with the Court's May 16 Order justifies the entry of default judgment under Rule 123(a) as to issues on which respondent has the burden of proof. Respondent recognizes that the Court has declined to find a taxpayer in default on the question of fraud in absence of sufficient evidence or fraud. Miller-Pocahontas Coal Co. v. Commissioner,21 B.T.A. 1360 (1931). However, respondent cites cases where we have found fraud based on deemed admissions. Marshall v. Commissioner,85 T.C. 267 (1985); Rechtzigel v. Commissioner,79 T.C. 132 (1982), affd. per curiam 703 F.2d 1063 (8th Cir. 1983); Doncaster v. Commissioner,77 T.C. 334 (1981). *510 Respondent argues that we may find petitioners in default under Rule 123(a) with the effect of "deeming admitted all respondent's factual and conclusory allegations relating to the fraud issue." Rechtizigel v. Commissioner, supra at 142 (fn. ref. omitted). We agree and by separate Order we have done so. In Rechtzigel, the taxpayer refused to comply with this Court's Order that he furnish documents requested by respondent under Rule 72. We discussed the relationship between the entry of a default judgment and a party's burden of proof under the Federal Rules of Civil Procedure, citing cases that recognize that "the effect of a default is to admit all well-pleaded facutal allegations of the nondefaulting party." Rechtzigel v. Commissioner, supra at 141-142. We stated that since our Rules authorizing a default judgment are derived from the Federal Rules of Civil Procedure, the results obtained should be no different. Respondent has made allegations in his answers in docket Nos. 538-85 and 42908-85 which we have deemed admitted and which provide ample support for a determination of fraud. Respondent has also presented evidence of fraud through stipulated exhibits and at trial. This *511 case is therefore distinguishable from Miller-Pocahontas Coal Co. v. Commissioner, supra.While petitioners have presented evidence which succeeds in reducing the underpayment upon which the addition for fraud is to be calculated, they have left unrebutted much of respondent's evidence, examples of which are contained in the present motion. As the allegations deemed admitted and respondent's evidence are sufficient to support the addition to tax for fraud, we find for respondent on this issue. The final issue, as the parties have stipulated, is whether section 7609(e) suspends the running of the statute of limitations for any period during which an appeal may be taken, regardless of whether an appeal was actually taken. It is clear that this question must be answered in the affirmative. Sec. 301.7609-5(b), Proced. and Admin. Regs.; United States v. Meyer,808 F.2d 1304 (8th Cir. 1987). In accordance with the parties' stipulation, we find that respondent's statutory notices for 1980 and 1981 are timely. [17] *512 Decisions will be entered under Rule 155.
Footnotes
1. Respondent's statutory notice in docket No. 32814-82 was issued on July 22, 1982; the statutory notice in docket No. 538-85 was issued on October 31, 1984; the statutory notice in docket No. 42908-85 was issued on October 22, 1985. These cases have been consolidated for purposes of trial, briefing, and opinion. These cases were also consolidated for trial purposes only with the case of Universal Church of Jesus Christ v. Commissioner,T.C. Memo. 1988-65↩. 2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. The Bureau of Collections was an operation controlled by the Universal Church of Jesus Christ. ↩
4. Uni-King is controlled by Universal Investments, Inc., in which Sly was a shareholder. ↩
5. Petitioners claimed no Schedule C deductions for 1977 and 1978. ↩
6. SEC. 274(d) Substantiation Required. -- No deduction or credit shall be allowed -- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), * * *
unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel [or] entertainment, [and] * * * (C) the business purpose of the expense or other item * * *. 7. The schedules include approximately 80 pages of apparent disbursements made during the years 1977 through 1982. The person by whom the disbursements were made is not indicated. We assume that some of the disbursements were bade by Sly personally and others by the Church on his behalf. We further assume that the listings for 1980, 1981, and 1982 are intended to support the Schedules C deductions claimed in those years by petitioners, although in the one year for which a total is provided, that amount is substantially less than the Schedule C deduction on the return for that year. 8. Additionally, the schedules contain many inconsistencies which cause us to question their accuracy. Although the example just cited represents that on April 20, 1981, Sly paid for 14 days in a motel in Florence, Alabama, the schedule also reflects that Sly was in many other cities during the 14 days before and after April 20, 1981. Those cities included Gadsden, Alabama, which is in Etowah County, where petitioners make their residence. ↩
9. Our examination of several examples from Bureau of Collections' bank records leads us to believe that taxation of these deposits to petitioners is fully justified. Our random check of those records reveals that, in more than one month, the dollar amount of checks payable to HELP or the FAN Club and deposited into the Bureau of Collections account, as more fully described below, is much larger than the dollar amount of checks written to HELP the next month. Such a fact is indicative of the use of those funds to pay personal expenses. ↩
10. Petitioners claimed no itemized deductions in 1977, 1978, or 1981. ↩
11. Sly described himself as an independent contractor. We view this as a concession of respondent's determination that petitioner is liable for self-employment tax. HELP is neither owned nor controlled by Sly. ↩
12. See n. 9, supra. Facts as set forth here are to be considered in light of our opinion in Universal Church of Jesus Christ v. Commissioner,T.C. Memo. 1988-65, in which we held that the Church was not a tax-exempt organization as described in section 501(c)(3)↩. 13. These Schedules C also include small amounts of expenses incurred by Mrs. Sly in her beauty shop business. There is no evidence in this record to substantiate any such expenses. ↩
14. Checks drawn on this account called it an investment account while bank statements called it a reserve account. ↩
15. The record contains no bank records for Universal Investments and respondent attributed no income from that corporation to petitioners. ↩
16. Testimony of Bobby Jones. ↩
17. This disposition of the statute of limitations issue makes it unnecessary to determine whether our sustaining the fraud addition under the circumstances of this case would make applicable the exception set forth in section 6501(c)(1).